IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **CHESTER & SHERRY HURST,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:22-cv-01093-DAE |
| | § | |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| *Defendant.* | § | |

## DEFENDANT'S FIRST AMENDED ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, Liberty Mutual Insurance Company ("Liberty and/or "Defendant"), and files this its First Amended Answer and would respectfully show the Court the following:

### I. DISCOVERY CONTROL PLAN

1. Defendant Liberty is not required to admit or deny the assertions in Section I, Paragraph 1 of Plaintiffs' Original Petition as it merely states that Plaintiffs intend to conduct discovery at Level 1, pursuant to Rule 190.2 of the Texas Rules of Civil Procedure.

### II. PARTIES

2. Defendant Liberty admits to the assertions in Section II, Paragraph 2 of Plaintiffs' Original Petition.

3. Defendant Liberty admits to the assertions in Section II, Paragraph 3 of Plaintiffs' Original Petition.

### III. JURISDICTION AND VENUE

4. Defendant admits the assertions in Section III, Paragraph 4 to the extent that the Llano County District Court had jurisdiction over this case. Defendant has properly removed this case.

5. Defendant Liberty denies the allegations of Section III, Paragraph 5 of Plaintiffs' Original Petition to the extent Plaintiffs allege that state court was mandatory. Defendant properly removed this case from state court based on complete diversity of the parties pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

6. Defendant Liberty admits to the allegations contained in Section III, Paragraph 6 of Plaintiffs' Original Petition.

7. Defendant Liberty denies the allegations contained in Section III, Paragraph 7 of Plaintiffs' Original Petition as Liberty generally denies Plaintiffs' entitlement to any of the pled damages stated therein.

## IV. CONDITIONS PRECEDENT

8. Defendant denies the allegations contained in Section IV, Paragraph 9 [1] of Plaintiffs' Original Petition.

## V. JUDICIAL NOTICE

9. Defendant Liberty is not required to admit or deny Section V, Paragraph 10 as Plaintiffs merely request the Court to take judicial notice of sections of Title 28 of the Texas Administrative Code.

10. Defendant Liberty is not required to admit or deny Section V, Paragraph 11 as Plaintiffs merely request the Court to take judicial notice of sections of Title 28 of the Texas Administrative Code.

## VI. ACTUAL/APPARENT AUTHORITY

11. Defendant Liberty denies the allegations of Section VI, Paragraph 12 of Plaintiffs' Original Petition.

---

[1] Plaintiffs' Original Petition is misnumbered as Plaintiffs omitted Paragraph 8.

## VII. FACTS

12.    With regard to Section VII, Paragraph 13, Defendant Liberty admits that it sold Plaintiffs a homeowners' policy, policy number H3V-291-921464-40 (the "Policy"). Defendant Liberty admits that the Policy contains coverage for damages sustained due to hail damage, subject to all the Policy's terms including all conditions and exclusions. Defendant Liberty admits that it accepted the risk during the underwriting process and issued the Policy, subject to all terms contained therein including all conditions and exclusions.

13.    Defendant Liberty admits to the allegations of Section VII, Paragraph 14 of Plaintiffs' Original Petition, and further states that Policy was in effect at the time of the loss made the subject of this suit, subject to all terms contained therein including all conditions and exclusions.

14.    Defendant Liberty cannot admit or deny the allegations of Section VII, Paragraph 15 of Plaintiffs' Original Petition as to the Plaintiffs' "reasonable expectations" regarding the Policy. Answering further, Defendant Liberty admits that the Policy contains coverage for damages sustained due to hail damage, subject to all the Policy's terms including all conditions and exclusions.

15.    Defendant Liberty denies the allegations of Section VII, Paragraph 16 of Plaintiffs' Original Petition.

16.    Defendant Liberty admits to the allegations of Section VII, Paragraph 17 of Plaintiffs' Original Petition in that Plaintiffs filed a claim with Defendant Liberty for damages to their property allegedly due to a hailstorm and requested coverage. Answering further, Defendant Liberty denies that Plaintiffs are entitled to the coverage requested.

17. Defendant Liberty admits that it hired Rimkus Engineering to assist with the investigation of the Plaintiffs' claim. Defendant Liberty denies all other remaining allegations of Section VII, Paragraph 18 of Plaintiffs' Original Petition.

18. Defendant Liberty admits that the parties underwent the appraisal process and the umpire returned a cost of repair award on March 22, 2022 in the stated amount of Section VII, Paragraph 19 of Plaintiffs' Original Petition. Defendant Liberty denies it is contractually obligated to pay this award.

19. Defendant Liberty admits the allegations of Section VII, Paragraph 20 of Plaintiffs' Original Petition that Plaintiffs' attorney provided a DTPA notice to Defendant Liberty. Answering further, Defendant Liberty admits it has not paid the cost of repair appraisal award as the claimed cost of repairs are not covered by the Policy and Defendant Liberty is not contractually obligated to pay this award.

20. Defendant Liberty denies the allegations of Section VII, Paragraph 21 of Plaintiffs' Original Petition.

21. Defendant Liberty denies the allegations of Section VII, Paragraph 22 of Plaintiffs' Original Petition.

22. Defendant Liberty admits that Rimkus Engineering inspected the Plaintiffs' property in November 2021, that an umpire returned a cost of repair award in March 2022, that Defendant Liberty requested a reinspection which occurred in July 2022 and requested additional documents, including purchase documents from the Plaintiffs. Defendant Liberty further admits it has not paid the cost of repair award returned by the umpire based on its coverage position communicated to Plaintiffs on numerous occasions and further denies all other allegations of Section VII, Paragraph 23 of Plaintiffs' Original Petition.

23. Defendant Liberty denies the allegations of Section VII, Paragraph 24 of Plaintiffs' Original Petition.

24. Defendant Liberty denies the allegations of Section VII, Paragraph 25 of Plaintiffs' Original Petition.

25. Defendant Liberty denies the allegations of Section VII, Paragraph 26 of Plaintiffs' Original Petition.

26. Defendant Liberty denies the allegations of Section VII, Paragraph 27 of Plaintiffs' Original Petition.

27. Defendant Liberty denies the allegations of Section VII, Paragraph 28 of Plaintiffs' Original Petition.

28. Defendant Liberty denies the allegations of Section VII, Paragraph 29 of Plaintiffs' Original Petition.

## VIII. CAUSES OF ACTION

29. Defendant Liberty is not required to admit or deny the allegations of Section VIII, Paragraph 30 of Plaintiffs' Original Petition as it merely incorporates by reference the preceding paragraphs.

30. Defendant Liberty admits Section VIII, Paragraph 31 of Plaintiffs' Original Petition as properly stating the general Texas law on breach of contract. Defendant Liberty specifically denies it breached the contract of insurance with the Plaintiffs.

31. Defendant Liberty denies the allegations of Section VIII, Paragraph 32 of Plaintiffs' Original Petition as this claim does not involve Hurricane Laura and the allegations are therefore nonsensical.

32.     Defendant Liberty denies the allegations of Section VIII, Paragraph 33 of Plaintiffs' Original Petition, with the exception of the statement that Plaintiffs' premiums were paid and current, which Defendant Liberty admits.

33.     Defendant Liberty denies the allegations of Section VIII, Paragraph 34 of Plaintiffs' Original Petition.

34.     Defendant Liberty denies the allegations of Section VIII, Paragraph 35 of Plaintiffs' Original Petition.

35.     Defendant Liberty is not required to admit or deny the allegations of Section VIII, Paragraph 36 of Plaintiffs' Original Petition as it merely incorporates by reference the preceding paragraphs.

36.     Defendant Liberty admits Section VIII, Paragraph 37 of Plaintiffs' Original Petition as properly stating Tex. Bus. & Comm. Code 17.45(4) and admits that Plaintiffs are consumers as defined by the DTPA.  Defendant Liberty specifically denies it violated any section of the DTPA.

37.     Defendant Liberty denies the allegations of Section VIII, Paragraph 38 of Plaintiffs' Original Petition in its entirety and including subsections (a) – (b).

38.     Defendant Liberty denies the allegations of Section VIII, Paragraph 39 of Plaintiffs' Original Petition.

39.     Defendant Liberty denies the allegations of Section VIII, Paragraph 40 of Plaintiffs' Original Petition.

40.     Defendant Liberty admits that Plaintiffs provided the requisite DTPA notice as alleged in Section VIII, Paragraph 41 of Plaintiffs' Original Petition. Defendant Liberty specifically denies it violated the DTPA.

41. Defendant Liberty is not required to admit or deny the allegations of Section VIII, Paragraph 42 as it merely incorporates the preceding paragraphs.

42. Defendant Liberty denies the allegations of Section VIII, Paragraph 43 of Plaintiffs' Original Petition, including all subsections set forth in (a) – (f).

43. Defendant Liberty denies the allegations of Section VIII, Paragraph 44 of Plaintiffs' Original Petition.

44. Defendant Liberty admits that Plaintiffs provided the requisite notice under the Texas Insurance Code as alleged in Section VIII, Paragraph 45 of Plaintiffs' Original Petition. Defendant Liberty specifically denies it violated the Texas Insurance Code.

45. Defendant Liberty denies the allegations of Section VIII, Paragraph 46 of Plaintiffs' Original Petition.

46. Defendant Liberty is not required to admit or deny the allegations of Section VIII, Paragraph 47 as it merely incorporates the preceding paragraphs.

47. Defendant Liberty denies the allegations of Section VIII, Paragraph 48 of Plaintiffs' Original Petition, including all subsections set forth in (1) – (7).

48. Defendant Liberty denies the allegations of Section VIII, Paragraph 49 of Plaintiffs' Original Petition, including all subsections set forth in (1) – (4).

49. Defendant Liberty denies the allegations of Section VIII, Paragraph 50 of Plaintiffs' Original Petition.

50. Defendant Liberty is not required to admit or deny the allegations of Section VIII, Paragraph 51 as it merely incorporates the preceding paragraphs.

51. Defendant Liberty denies the allegations of Section VIII, Paragraph 52 of Plaintiffs' Original Petition.

52. Defendant Liberty is not required to admit or deny the allegations of Section VIII, Paragraph 53 as it merely incorporates the preceding paragraphs.

53. Defendant Liberty denies the allegations of Section VIII, Paragraph 54 of Plaintiffs' Original Petition.

54. Defendant Liberty denies the allegations of Section VIII, Paragraph 55 of Plaintiffs' Original Petition.

### IX. AMBIGUITY

55. Defendant Liberty denies the allegations of Section IX, Paragraph 56 of Plaintiffs' Original Petition.

### X. WAIVER AND ESTOPPEL

56. Defendant Liberty denies the allegations of Section X, Paragraph 57 of Plaintiffs' Original Petition.

### XI. DAMAGES

57. Defendant Liberty denies the allegations of Section XI, Paragraph 58 of Plaintiffs' Original Petition.

58. Defendant Liberty denies the allegations of Section XI, Paragraph 59 of Plaintiffs' Original Petition.

59. Defendant Liberty denies the allegations of Section XI, Paragraph 60 of Plaintiffs' Original Petition.

60. Defendant Liberty denies the allegations of Section XI, Paragraph 61 of Plaintiffs' Original Petition.

### XII. ATTORNEYS' FEES

61.     Defendant Liberty denies the allegations of Section XII, Paragraph 62 of Plaintiffs' Original Petition in that Defendant denies Plaintiffs are entitled to any of the attorneys' fees and costs demanded.

### XIII. PRAYER AND JURY DEMAND

62.     Defendant Liberty denies that Plaintiffs are entitled to any of the alleged and prayed for damages set forth in Section XIII, Paragraph 63 of Plaintiffs' Original Petition. Defendant Liberty cannot admit or deny the last sentence of Paragraph 63 as it only requests a trial by jury.

### AFFIRMATIVE DEFENSES

**A.     Coverage Exclusions and Limitations**

63.     The Policy issued by Defendant to Plaintiffs includes the following pertinent exclusions and limitations to coverage:

**HOMEOWNERS 3 – SPECIAL FORM AGREEMENT**

**We will provide the insurance described in this policy in return for the premiums and compliance with all applicable provisions of the policy.**

…

**SECTION I- PERILS INSURED AGAISNT**

**A. Coverage A – Dwelling and Coverage B – Other Structures**

1. We insure against risk of direct physical loss to property described in Coverages A and B.
2. We do not insure, however, for loss
…
(6) Any of the following:
    (a) Wear and tear, "marring," deterioration;
    (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;
    (c) Smog, rust or other corrosion, wet or dry rot;

**. . .**
**SECTION I – EXCLUSIONS**

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.
**. . .**

3. Faulty, inadequate or defective:
    a. Planning, zoning, development, surveying, siting;
    b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c. Materials used in repair, construction, renovation or remodeling; or
    d. Maintenance;
of part or all of any property whether on or off the "residence premises."

. . .

**Pre-existing Damage**

Pre-existing damage means any damage that occurred prior to the policy inception, including damage arising out of workmanship, repairs and/or lack of repairs from damage that occurred prior to policy inception. This exclusion applies regardless of whether such damage was apparent at the time of the inception of the policy.

Cosmetic loss or damage, meaning any loss that alters only the physical appearance of "metal materials" but:
    a. does not result in the penetration of water through the "metal materials;" or
    b. does not result in the failure of the "metal materials" to perform their intended function of keeping out the elements.

For the purposes of this exclusion, "metal materials" means:
    a. all metal roofing materials that are part of the dwelling; or
    b. all "metal materials" that are part of an other structure. This exclusion does not apply to non-roof "metal materials" that are primarily decorative, prominent and visible from the ground.

…

**SECTION 1 – CONDITIONS**

…

**C. Loss Settlement. Covered property losses are settled as follows:**

…

3. We will not pay for the cost to replace and/or match any undamaged siding, "roof surfacing" and/or windows due to any mismatch between the existing undamaged siding, "roof surfacing" and/or windows on a covered dwelling or other structures and any new materials used to repair or replace the damaged siding, roof and/or windows on a covered dwelling or other structures because of:
    a. wear and tear, marring, scratching or deterioration;
    b. fading, weathering, oxidizing or color;
    c. texture or dimensional differences;
    d. obsolescence or unavailability of materials; or
    e. inherent vice, latent defect, mechanical breakdown.

…

**E. Appraisal**

1. If you and we do not agree on the amount of the loss, including the amount of actual cash value or replacement cost, then, on the written demand of either, each shall select a qualified appraiser and notify the other of the appraiser selected within 20 days of such demand.

2. In order for a person to be qualified to act as an appraiser, the person must be competent, independent, neutral and impartial.

3. A person shall not be qualified to act as an appraiser: a. who has performed, or who is employed by any entity which has performed any work, or a person who has provided any service for either you or us in relation to any claimed loss under this policy, whether or not such work or service has been or will be paid; or b. who has or may perform, or who is employed by an entity which has or may perform repairs or replacement of your property.

4. The appraisers shall first select a qualified umpire. In order for a person to be qualified to act as an umpire, such person must meet the same qualifications required to act as an Appraiser.

5. If, after 15 days, the appraisers are unable to agree upon such umpire, then, on request of you or the company after notice of hearing to the non-requesting party by certified mail, such umpire shall be selected by a judge of a court of record in the county in which the property covered is located.

6. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the actual cash value and replacement cost of each item, and failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with us shall determine the amount of loss.

7. Upon our receipt of an appraisal award, in conformance with the Appraisal provision of this policy, payment by us of the award, or any part of the award, within the time required in this policy estops any contractual or extra-contractual claim by you which may directly or indirectly arise from or may be related to the failure of you and us to agree as to the actual cash value and/or replacement cost of your claimed loss. Your failure or refusal to accept our payment of the award, or partial payment does not affect estoppel. Our payment of the award, or partial payment, binds you and us to that part paid and estops any contractual or extra-contractual claim as to that part paid.

8. Each party will: a. pay its own appraiser; and b. bear the other expenses of the appraisal and umpire equally.

9. Any demand for appraisal must be made either within the contractual suit limitations period stated in this policy or during the pendency of a timely filed lawsuit related to the claimed loss. Otherwise, neither you nor we may demand an appraisal.

10. If you or we timely demand an appraisal, then upon request made by either you or us for abatement of any suit for or involving the claimed loss, the suit shall be abated until after an appraisal award is made in accord with this appraisal clause.

11. Even after an appraisal award, we retain the right to deny any claimed loss, or any part thereof.

64. Plaintiffs' claims for damages under the Policy are excluded by one or more of the above-cited exclusions and/or limitations. The assertion of a specific provision of the Policy in this Amended Answer is not intended to be a waiver or abandonment of any other applicable provision of the Policy. The Policy in its entirety is asserted and incorporated by reference.

B.    **Failure of Conditions Precedent**

65. Plaintiffs have failed to comply with one or more provisions of the Policy that serve as a condition precedent to recovery. These failures include, but are not limited to, the following:

- Showing a loss within the coverage of the Policy.

66. The Policy expressly provides that there can be no action against Defendant unless there has been full compliance with the terms and conditions of the Policy. Plaintiffs are therefore contractually precluded from bringing this action against Defendant.

**C.    Bona Fide Dispute**

67. Defendant affirmatively answers that, after reasonable investigation regarding the cause of damage to Plaintiffs' property, there is a *bona fide* dispute about the cause of the damage in this case. Because there is a *bona fide* dispute, Defendant acted reasonably in declining to pay the claim made the basis of the lawsuit. As a matter of law, Plaintiffs claims for bad faith, as well as alleged violations of the Texas Insurance Code, are barred because there is a *bona fide* dispute about causation in this case.

**D.    Limitations on Damages, Occurrence Limits, and Deductibles**

68. Defendant's liability, if any, for damages in this case are limited by various provisions of the Policy. These include the limits of liability provided for on the Declarations Pages of the Policy, as well as the deductible applicable to the loss which is also included on the Declarations Pages.

WHEREFORE, PREMISES CONSIDERED, Defendant Liberty Mutual Insurance Company respectfully prays that upon final hearing hereof, Plaintiffs take nothing by reason of this action, that Defendant be awarded its costs of court, and for such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

**HANNA & PLAUT, L.L.P.**
211 East Seventh Street, Suite 600
Austin, Texas 78701
Telephone:   (512) 472-7700
Facsimile:   (512) 472-0205

By:   */s/ Tara D. Mireur*
      Catherine L. Hanna
      State Bar No. 08918280
      channa@hannaplaut.com
      Tara D. Mireur
      State Bar No. 24001959
      tmireur@hannaplaut.com

**ATTORNEYS FOR DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served via e-service on this 26th day of May, 2023 to:

Joe Muckleroy                                   *Via Email: joe@brasherattorney.com*
THE BRASHER LAW FIRM, PLLC
1122 Orleans St.
Beaumont, Texas 77701
*Attorneys for Plaintiffs*

                                                */s/ Tara D. Mireur*
                                                Tara D. Mireur